## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAKADILA ESPERANCE DIAKANUA et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 24-1027 (TJK) |
| MARCO RUBIO, *in his official capacity as U.S. Secretary of State*, | |
| *Defendant*. | |

## <u>MEMORANDUM OPINION</u>

Bakadila Esperance Diakanua is a legal permanent resident who has petitioned for her husband, Milord Luvasu Muila, to receive a family-based visa. Though Diakanua filed her petition in May 2020 and Muila filed all the required documentation in August 2022, they allege that Defendant, the U.S. Secretary of State, has still not finally adjudicated Muila's case. So they sued, asking the Court to order Defendant to hurry up. Defendant now moves to dismiss. Because the Court concludes that Plaintiffs have failed to plausibly allege that Defendant has unreasonably delayed adjudication of Muila's case and that they lack standing for their other claims, the Court will grant Defendant's motion and dismiss the case.

## I.    Background

### A.    Legal Background

The Immigration and Nationality Act ("INA") provides a pathway for family members of U.S. citizens and legal permanent residents ("LPRs") to apply for visas to live in the United States. 8 U.S.C. § 1151(a)(1), (b)(2)(A)(i), (c). But not all family-sponsored visas are treated the same. For "immediate relatives" of citizens, for example, the INA sets no "direct numerical limitations"

on the number of visas—called "IR visas"—that may issue.  *Id.* § 1151(b), (b)(2)(A)(i).  But for other family members of citizens and LPRs, the INA includes an equation that establishes how many family-sponsored preference ("FP") visas may be granted each year, with a floor at 226,000 visas.  *Id.* § 1151(c).

This number is itself broken down further, with a fraction of the total number reserved for four different preference categories.  8 U.S.C. § 1153(a).  For example, the INA allocates 23,400 visas for the "[u]nmarried sons and daughters of citizens."  *Id.* § 1153(a)(1).  Any unused visas in this first category, plus 114,200 additional visas, are then allocated to "the spouses," "children," or "unmarried sons or unmarried daughters" of LPRs.  *Id.* § 1153(a)(2).  Leftover visas from this category are then added to an additional 23,400 visas, which are reserved for "the married sons or married daughters of citizens."  *Id.* § 1153(a)(3).  Then, any remaining visas, plus 65,000, are allocated to "the brothers or sisters of citizens."  *Id.* § 1153(a)(4).  Finally, to circle back, "any visas not required for" the brothers or sisters of citizens are then reallocated back to "the unmarried sons or daughters of citizens."  *Id.* § 1153(a)(1).

The INA operationalizes these visa allocations by laying out the procedures for applying for and granting immigrant visas.  8 U.S.C. § 1154.  As relevant here, "any alien lawfully admitted for permanent residence claiming that an alien is entitled to a classification by reason of the relationship described in section 1153(a)(2) of this title may file a petition with the Attorney General for such classification."  *Id.* § 1154(a)(1)(B)(i)(I).  Then, if the Attorney General "determines that the facts stated in the petition are true and that the alien [o]n behalf of whom the petition is made . . . is eligible for preference under subsection (a) or (b) of section 1153," she "shall . . . approve the petition."  *Id.* § 1154(b).  Once the petition is approved, the beneficiary may "begin the process of formally applying for an immigrant visa."  ECF No. 1 ¶ 48.  Of course, final approval of those

applications is subject to the numerical limitations established in § 1153(a).  And the INA requires that FP visas "shall be issued to eligible immigrants in the order in which a petition [o]n behalf of each such immigrant is filed with the Attorney General."  8 U.S.C. § 1153(e)(1).

### B.    Factual and Procedural Background

Diakanua is an LPR seeking an FP visa for her husband, Muila, a national of the Democratic Republic of the Congo.  ECF No. 1 at ¶¶ 1, 29.  They allege that Diakanua filed the relevant petition on May 2, 2020, and that Muila paid the required filing fees and filed all the relevant forms and "supporting documents" on August 15, 2022.  *Id.* ¶¶ 1–2.  Then, on October 25, 2022, the National Visa Center ("NVC") declared Muila's "case to be documentarily qualified."  *Id.* ¶ 3.  Plaintiffs allege that, once a case is considered documentarily qualified or documentarily complete, "the applicant must be scheduled . . . for an interview."  *Id.* ¶ 50.  But according to Plaintiffs, Muila still has not been scheduled for an interview.  *Id.* ¶ 5.  Instead, Plaintiffs allege that Muila's visa application has been pending, without significant action, since October 2022.  *Id.*

Based on this alleged delay, Plaintiffs sued in April 2024.  ECF No. 1.  They allege that Defendant, the U.S. Secretary of State, has unreasonably delayed resolving Muila's visa application.  *Id.* ¶ 6.  So they bring one count under the Mandamus Act and another under the Administrative Procedure Act ("APA").  *Id.* ¶¶ 135–56.  They also bring a third count under the APA, alleging that Defendant has unlawfully failed to issue all the FP visas authorized by the INA.  *Id.* ¶¶ 157–62.

Defendant now moves to dismiss.  ECF No. 7.  He argues that the Court lacks jurisdiction over Plaintiffs' unreasonable-delay claims and that Plaintiffs lack standing to challenge the number of FP visas the Department of State issues in any given year.  And to the extent the Court does have jurisdiction, Defendant argues that Plaintiffs have failed to state a claim.

Additionally, Defendant argues that intervening factual developments have mooted the

case. ECF No. 18. Specifically, Defendant asserts that a consular officer interviewed Muila on December 18, 2024. ECF No. 15 at 1. Defendant further represents that "[t]he consular officer adjudicated Mr. Muila's visa application at the conclusion of the interview and refused the application under section 221(g) of the Immigration and Nationality Act, 8 U.S.C. § 1201(g)." *Id.* In response, the Court ordered Plaintiffs to "submit a status report . . . explaining why, if at all, this case is not moot." Minute Order of Jan. 8, 2025. In that status report, Plaintiffs concede that Muila was interviewed. ECF No. 16 at 8. But they argue that Muila's visa was never finally adjudicated; instead, he allegedly received only a "non-final notice for administrative processing" and was "requested to provide additional documents." *Id.*

## II.    Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs have the burden to establish the Court's subject-matter jurisdiction. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). This includes the burden to establish standing. *Little v. Fenty*, 689 F. Supp. 2d 163, 166–67 (D.D.C. 2010). That burden "grows heavier at each stage of the litigation." *Osborn v. Visa Inc.*, 797 F.3d 1057, 1063 (D.C. Cir. 2015). To survive a motion to dismiss, Plaintiffs need only allege a qualifying "injury resulting from [Defendant's] conduct." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). In evaluating a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and . . . grant[] [P]laintiff[s] the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted). That said, "[a] court may also consider material beyond the allegations in the complaint when determining whether it has jurisdiction to hear the case, so long as it accepts the factual allegations in the complaint as true." *Holland v. ACL Transp. Servs., LLC*, 815 F. Supp. 2d 46, 52 (D.D.C. 2011). But when a defendant argues that a court lacks jurisdiction because a case is moot, "[t]he burden of establishing mootness . . . rests with the

defendant." *Garcia v. Acosta*, 393 F. Supp. 3d 93, 107 n.2 (D.D.C. 2019).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs state a facially plausible claim when they plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.    Analysis

### A.    Muila's Interview Does Not Moot This Case

To begin, the Court disagrees with Defendant that this case is moot. According to Defendant, because the Department of State has interviewed Muila and denied his visa application, "Plaintiffs have now received the consular interview and adjudication they requested in the Complaint." ECF No. 15 at 1. And true, "[a] case is moot when 'a party has already obtained all the relief that it has sought.'" *Schnitzler v. United States*, 761 F.3d 33, 37 (D.C. Cir. 2014) (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)).

That is not what has happened here. In their complaint, Plaintiffs ask the Court, among other things, to "compel[] Defendant and those acting under him to perform their duty to . . . adjudicate" Muila's visa application. ECF No. 1 at 38. And they dispute Defendant's characterization that the Department of State has done so. *See* ECF No. 16 at 12. According to Plaintiffs, following Muila's interview, the consular officer only gave him a "non-final notice for administrative processing" and "requested" that he "provide additional documents." *Id.* at 8. And they

allege in their complaint that such "Quasi-Refusal[s]" are not final adjudications on visa applications because, if an applicant does provide more information, "the application *must* be reconsidered" under the relevant regulations. ECF No. 1 ¶¶ 70–72 (quotation omitted). In sum, Plaintiffs' complaint seeks relief beyond the "Quasi-Refusal" of placing Muila's application in administrative processing. So they have not already been given everything they asked for in their complaint, and the case is not moot. *See Schnitzler*, 761 F.3d at 37.

In response, Defendant argues that, in interviewing Muila and in placing his case in administrative processing, consular officers "discharged the only duty that was owed" as "[t]here is no legally enforceable duty to complete or speed up post-refusal, discretionary administrative processing." ECF No. 18 at 2. But this argument "confuses mootness with the merits." *Chafin v. Chafin*, 568 U.S. 165, 174 (2013). Disputed "questions regarding the 'legal availability of a certain kind of relief' go to the merits of a case, not mootness." *Sandpiper Residents Ass'n v. HUD*, 106 F.4th 1134, 1142 (D.C. Cir. 2024) (quoting *Chafin*, 568 U.S. at 174). And when considering whether a case is moot, courts "assume that the plaintiffs would be successful on the merits." *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 955 (D.C. Cir. 2016).

Here, Plaintiffs' complaint alleges that Muila was entitled not only to an interview but more than that—a final adjudication on his visa application. ECF No. 1 at 38. And it further alleges that an initial refusal, followed by placing an application in administrative processing, is not a final adjudication. ECF No. 1 ¶¶ 70–72. Thus, Defendant's mootness argument necessarily involves a determination on the merits of Plaintiffs' claim. And because, in evaluating mootness, the Court must assume that Plaintiffs are correct on the merits, it must assume that the law authorizes the relief Plaintiffs seek. *Sandpiper Residents Ass'n*, 106 F.4th at 1142. In other words, Plaintiffs have not received all the relief they seek, and, assuming they are correct on the merits, the Court

may still grant Plaintiffs effectual relief by, for example, ordering Defendant to speed up his administrative processing of Muila's application. So the case is not moot.[1]

### B.    The Court Will Dismiss Plaintiffs' Unreasonable-Delay Claims

Having concluded that this case is not moot, the Court now turns to the arguments Defendant advances in the motion to dismiss.[2] Recall that in Count I and Count II of Plaintiffs' complaint, they allege that they are entitled to an order mandating that Defendant promptly adjudicate Muila's visa application. For the reasons discussed below, the Court agrees with Defendant that Plaintiffs have failed to plausibly allege that Defendant's delay in adjudicating Muila's visa was unreasonable.

As a threshold matter, Defendant argues that the Court should dismiss Counts I and II for lack of subject-matter jurisdiction without analyzing whether the alleged delay was unreasonable because, according to Defendant, Plaintiffs have failed to identify a discrete action the Department of State was required to take, which is a jurisdictional defect the Court must address before going to the merits. ECF No. 7 at 22–33; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998). But the Court's obligation to address its jurisdiction before considering the merits

_____

[1] In so holding, the Court agrees with every other court in this district that a denial of a visa application by placing it in administrative processing does not moot an applicant's case. *Dalmar v. Blinken*, No. 23-cv-3315, 2024 WL 3967289, at *2 (D.D.C. Aug. 26, 2024); *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 87 (D.D.C. 2022); *Shen v. Pompeo*, No. 20-cv-1263, 2021 WL 1246025, at *1, *5 (D.D.C. Mar. 24, 2021); *cf. Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 292 (D.D.C. 2016); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-cv-1388, 2019 WL 367841, at *9–10 (D.D.C. Jan. 30, 2019).

[2] Because Defendant's motion argues only that Plaintiffs' complaint itself fails to state a claim or establish that the Court has jurisdiction, the remainder of the Court's decision relies only on the facts as alleged in the complaint and does not consider the intervening factual developments discussed by the parties in their status reports, ECF Nos, 16, 18, 19. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

does not prevent it from deciding this case on the reasonableness of Defendant's alleged delay.

First, as to the mandamus claim in Count I, the Court's mandamus jurisdiction is limited to cases where "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Muthana v. Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021) (quoting *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010)). Because the plaintiffs' right to relief is a jurisdictional element, "mandamus jurisdiction under § 1361 merges with the merits." *Id.* (quoting *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020)). And a court may address "issues that are jurisdictional or have jurisdictional overtones in any order." *United States v. Johnson*, 254 F.3d 279, 287 n.11 (D.C. Cir. 2001) (quotation and internal quotation marks omitted). Here, the reasonableness of Defendant's alleged delay goes to whether Plaintiffs have "a clear right to relief." *Muthana*, 985 F.3d at 910. Because this is itself a jurisdictional question, the Court may consider it without first addressing whether Plaintiffs have also identified a "clear duty to act." *Id.*

Second, as to the APA claim, it is true that Plaintiffs must "allege that the agency failed to take a discrete agency action that it is required to take" as an element of the APA's unreasonable-delay cause of action. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quotation and internal quotation marks omitted). But unlike with the mandamus statute, the elements of the APA's causes of action are not jurisdictional. *Trudeau v. FTC*, 456 F.3d 178, 183–84 (D.C. Cir. 2006). Instead, the Court has jurisdiction over this federal claim under 28 U.S.C. § 1331, the general federal-question-jurisdiction statute. *Id.* at 185. And the APA's waiver of Defendant's sovereign immunity—which states that "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency . . . failed to act . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States,"

5 U.S.C. § 702—waives sovereign immunity in all suits seeking injunctive relief, regardless of the cause of action. *Trudeau*, 456 F.3d at 186. And since that waiver is not tied to the APA's causes of action, the elements of those causes of action do not limit the APA's waiver of sovereign immunity. *Id.* at 187. Thus, there is no jurisdictional reason why the Court must address the "discrete agency action" argument rather than assuming that Plaintiffs have plausibly alleged that element and resolving the case on the reasonableness of the alleged delay. So the Court will do just that.[3]

The APA allows a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take and, second, that the delay was unreasonable." *Da Costa*, 80 F.4th at 340 (cleaned up). Plaintiffs also invoke the Court's mandamus jurisdiction. Courts may issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Consideration of any mandamus petition starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (cleaned up). The central question is "whether the agency's delay is so egregious as to warrant mandamus." *Id.* (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 79 (D.C. Cir. 1984)).

"The same standard applies to claims of unreasonable delay under the APA and the

---

[3] Plaintiffs also argue that discussing the reasonableness of the alleged delay would be "premature" at the motion-to-dismiss stage because unreasonable-delay claims "require fact-based inquiries" better resolved on motions for summary judgment. ECF No. 8 at 33–34. "But recent D.C. Circuit precedent makes clear that a court may consider the [reasonableness of the alleged delay] at the motion-to-dismiss stage where, as here, the facts alleged do not support a plausible claim of unreasonable delay." *Khan v. Blinken*, No. 23-cv-3474 (TJK), 2024 WL 2880426, at *2 n.2 (D.D.C. June 7, 2024).

Mandamus Act." *Khan*, 2024 WL 2880426, at *2. But "[t]here is 'no *per se* rule as to how long is too long' to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). Instead, courts rely on the six "*TRAC* factors":

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (cleaned up); *see also Da Costa*, 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors.").

These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," as each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). The reasonableness of a delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful"; instead, it "will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

"In this case, taken together, the *TRAC* factors weigh strongly in Defendant's favor. Thus, even accepting Plaintiffs' allegations as true, they do not state a claim for unreasonable delay under

this Circuit's precedents." *Khan*, 2024 WL 2880426, at *2.

### 1.    *TRAC* Factors One and Two

The first two *TRAC* factors heavily favor Defendant.  These factors are typically considered together because they collectively establish "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  The first factor is commonly regarded as the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d at 855.  This is particularly true here because the NVC is under "no congressionally imposed timeline" for adjudicating visa applications. *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020).  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017).[4]  Without a "set timeline, the Court looks to case law for guidance." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021).

The Court concludes that the NVC employs a rule of reason and "identifiable rationale" when scheduling consular interviews and adjudicating visas. *Ctr. for Sci. in the Pub. Int.*, 74 F. Supp. 3d at 300.  As Plaintiffs allege, once an applicant's file becomes documentarily complete, the NVC works to "schedule an appointment at an overseas consular post." ECF No. 1 ¶ 51.  And "visa interviews are scheduled in the order in which the cases become 'documentarily complete,' a methodology that courts in this District have consistently found is a 'rule of reason,' satisfying the first *TRAC* factor." *Khan*, 2024 WL 2880426, at *3 ("Upon visa availability, [the National

---

[4] "Congress has expressed its sense that 'the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application.'" *Khan*, 2024 WL 2880426, at *3 n.5 (quoting 8 U.S.C. § 1571(b)).  But "a sense of Congress resolution is not law." *Emergency Coal. to Def. Educ. Travel v. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008).  Such an "aspirational statement" can, at most, only slightly tilt the second *TRAC* factor in Plaintiffs' favor. *Da Costa*, 80 F.4th at 344 ("This factor somewhat favors Plaintiffs, as they have waited longer than 180 days.").

Visa Center] generally schedules appointments in the chronological order of the documentarily complete applicants." (alteration in original) (quoting 9 *Foreign Affairs Manual* § 504.4-6)); *see also Da Costa*, 80 F.4th at 340–43 (analyzing the near-identical "first-in, first-out process" employed by USCIS when processing Form I-526 petitions).[5]

"Courts in this jurisdiction often look to the length of delay as a rough yardstick to determine whether th[is] 'first-in, first-out' rule is, in fact, being applied." *Mottahedan v. Oudkirk*, No. 23-cv-3486, 2024 WL 124750, at *4 (D.D.C. Jan. 11, 2024). To begin, the parties dispute how long the delay in this case is. Plaintiffs argue that the clock started ticking when Diakanua filed her petition on May 2, 2020. ECF No. 8 at 41. But *Salihi v. Blinken*, the case on which Plaintiffs rely for this proposition, is out-of-circuit authority that does not explain why the court began its calculations when it did. *See* No. 23-cv-718, 2023 WL 8007348, at *1, *7 (S.D. Cal. Nov. 17, 2023). And in this district at least, "courts 'measure the period of delay from the last government action to the issuance of the opinion.'" *Khan*, 2024 WL 2880426, at *3 (quoting *Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022)). Defendant also argues that the Court should not include any time following Plaintiffs' filing of the complaint in its calculations. And some courts in this district do apply this rule. *See, e.g.*, *Barazandeh v. U.S.*

---

[5] Plaintiffs also cite two declarations that describe the process that occurs after a consular officer requests a Security Advisory Opinion (SAO) relating to a visa applicant's eligibility. ECF No. 8 at 37. Because of the inherent complexity of this process, it does not operate on a first-in, first-out basis. ECF No. 1-6 at 7. Plaintiffs argue that this nullifies the agency's "rule of reason," but that is a non-starter; under the facts as alleged in the complaint, "that process has [no]thing to do with the delay in this case." *See Khan*, 2024 WL 2880426, at *3 n.4. The complaint lays out the SAO process, but it never alleges that this process was applied to Muila's visa application. *See* ECF No. 1 ¶ 74. Even in Plaintiffs' status reports discussing Muila's interview, they do not allege that any consular officers requested an SAO for Muila. Instead, they allege only that the application was placed in "administrative processing." ECF No. 16 at 12. Nothing suggests that the SAO process is delaying Muila's application, so that process cannot invalidate the agency's "rule of reason" governing the scheduling of consular interviews. *See Khan*, 2024 WL 2880426, at *3 n.4.

*Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024). But because the Court concludes that the alleged delay was not unreasonable even under the longer timeline, the court will include post-filing time in its calculations. *See Khan*, 2024 WL 2880426, at *3 ("[T]wo-and-a-half years . . . does not approach unreasonable under the relevant case law.").

Since Muila's case was marked documentarily complete on October 25, 2022, ECF No. 1 at ¶ 3, the alleged delay here is roughly two-and-a-half-years long. While this "wait is undoubtedly maddening," its "length . . . alone is not sufficient to show that [the NVS] does not follow a rule of reason" in scheduling consular interviews. *Da Costa*, 80 F.4th at 342. Courts in this district have "routinely f[ound] that delays of numerous *years* are not unreasonable." *Mottahedan*, 2024 WL 124750, at *4; *see also Da Costa*, 80 F.4th at 340–43 (four-and-a-half years); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592, 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (42 months). As one court in this district has summarized, "district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (cleaned up). Thus, the relevant case law, which is the operative "guidance" for establishing the reasonable timeline in this case, pushes the first *TRAC* factor firmly in favor of the government. *Dastagir*, 557 F. Supp. 3d at 165.[6]

This conclusion is further underscored by "the complexity of the task at hand." *Mashpee*

---

[6] Plaintiffs argue that "courts have found that 9 months to 2 years is unreasonable" in "typical visa delay cases." ECF No. 8 at 41. But the cases Plaintiffs cite are all out-of-circuit authority. And regardless, they are all distinguishable. In *American Academy of Religion v. Chertoff*, for example, the court found a nine-month delay unreasonable, but that was because the embassy involved in that case normally processed applications within two days of their receipt. 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006). The nine-month delay thus stood as a marked departure from normal practice, something Plaintiffs have not alleged here. And *Doe v. Risch* involved an SAO which, as the Court has already discussed, is irrelevant for a case like this. 398 F. Supp. 3d 647, 656–57 (N.D. Cal. 2019); *see also Khan*, 2024 WL 2880426, at *3 n.4.

*Wampanoag Tribal Council*, 336 F.3d at 1102.  FP visas are governed by a complex statutory scheme that sets numerical caps for visas granted during a fiscal year.  *See* 8 U.S.C. § 1151(c); see *also Li v. Renaud*, 654 F.3d 376, 377 (2d Cir. 2011).  These visas are then divided among the different preference categories with specific numerical limitations for each.  8 U.S.C. § 1153(a).  Additionally, natives of any single foreign state may "not constitute more than 7% of the visas granted to family-sponsored immigrants."  *Li*, 654 F.3d at 377; 8 U.S.C. § 1152(a)(2).  Thus, the agency has been tasked with using a complex statutory formula to calculate the number of FP visas available in a year and distribute those visas among separate categories (each with distinct statutory formulas), while also determining how many visas will be available for each foreign country, which is subject to another statutory limitation.  And this is on top of the "complex" "balancing . . . involving security and diplomacy" that consular officers must already consider when adjudicating visa applications.  *See Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affs.*, 104 F.3d 1349, 1353 (D.C. Cir. 1997).

Beyond that, Plaintiffs' complaint recognizes that "[t]he security situation in the Democratic Republic of the Congo has become extremely volatile."  ECF No. 1 ¶ 106.  And it notes that this unrest and violence has impacted the Department of State's ability to operate in that country.  *Id.* ¶ 105 ("The U.S. government has extremely limited ability to provide emergency consular services to U.S. citizens outside of Kinshasa due to poor infrastructure and security conditions.").  These circumstances are important to consider when assessing "the context of an agency action and the resources it can bring to bear."  *Khan*, 2024 WL 2880426, at *4.  And they strongly weigh against second-guessing how Defendant is managing his ability to process an application like Muila's.

These considerations all support the reasonableness of the two-and-a-half-year length of

the alleged delay.  So the first and second *TRAC* factors, taken together, weigh in Defendant's favor.

### 2.    *TRAC* Factor Four

The fourth *TRAC* factor considers the effect of expedition on an agency's competing priorities.  *TRAC*, 750 F.2d at 80.  This factor "carries the greatest weight in many cases" and often favors the agency.  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020).  "Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'"  *Lee v. Blinken*, No. 23-cv-1783, 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)).  There is "no net gain" under these circumstances, which has led the courts in this district to "refuse[] to grant [such] relief, even [when] all the other factors considered in *TRAC* favor[] it."  *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (quotation omitted).

Here Plaintiffs ask the Court to order Defendant to move Muila to the head of the proverbial queue, the precise relief courts in this district have been reluctant to grant.  *Dastagir*, 557 F. Supp. 3d at 167.  They ask this Court to order the agency to interview Muila and adjudicate his visa application "within 21 days."  ECF No. 1 at 38.  "In other words, Plaintiffs seek to cut to the front of the line."  *Khan*, 2024 WL 2880426, at *4.  This is "the very type of agency action . . . that if compelled would presumably delay other adjudications."  *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka*, 246 F. Supp. 3d at 154).  Thus, Plaintiffs' requested relief would simply put them at "the head of the queue," "move[] all others back one space," and result in "no net gain."  *In re Barr Lab'ys*, 930 F.2d at 75.

Plaintiffs argue that this factor favors them because there is no evidence that a queue exists. ECF No. 8 at 43, 44–45.  But Plaintiffs' complaint implicitly recognizes such a queue.  For

example, Plaintiffs allege that Muila's case became "current" in October 2022. ECF No. 1 ¶ 15. Though Plaintiffs do not define that term, Defendant explains—without contradiction—that an applicant's case is "current" when there are not "so many individuals . . . ahead of [him] in line that [he] must continue to wait" for an available visa. ECF No. 7 at 18. And as the Ninth Circuit has clarified, whether a case is "current" depends on the applicant's "place in the queue." *Babaria v. Blinken*, 87 F.4th 963, 974 (9th Cir. 2023). By alleging that Muila's case is "current," therefore, Plaintiffs implicitly concede that a queue exists.

Additionally, Plaintiffs' argument is refuted by the nature of the statutory scheme at issue. As previously explained, Congress has mandated that only a certain number of FP visas under each sub-category can be issued for a particular country each year and that FP visas "shall be issued to eligible immigrants in the order in which a petition [o]n behalf of each such immigrant is filed." 8 U.S.C. § 1153(a), (e)(1). The statute itself, therefore, creates a "first-in, first-out" priority scheme, and "'[f]irst-in, first-out' is enough to establish a queue." *Varghese v. Blinken*, No. 21-cv-2597, 2022 WL 3016741, at *6 (D.D.C. July 29, 2022). Accordingly, ordering the agency to prioritize Muila's application would "presumably delay other adjudications." *Liu*, 544 F. Supp. 3d at 13 (quotation omitted). So Plaintiffs' reliance on the Circuit's decision in *Afghan & Iraqi Allies v. Blinken* is misplaced because that case did not implicate any "line-jumping" concerns. 103 F.4th 807, 819 (D.C. Cir. 2024) (quotation omitted) (explaining that the plan at issue "did not lead to anyone jumping the line to move ahead of others with longer-pending applications").

At bottom, Plaintiffs' requested relief would amount to a "judicial reordering of agency priorities." *Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up). This is the exact result that the fourth *TRAC* factor was designed to prevent. As

such, this factor weighs in favor of Defendant.[7]

### 3.    *TRAC* Factors Three and Five

"Factors three and five involve 'the interests prejudiced by delay,' including possible effects on 'human health and welfare.'" *Khan*, 2024 WL 2880426, at *4 (quoting *TRAC*, 750 F.2d at 80); *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors in tandem). Plaintiffs claim that these factors support them because their family has been separated for multiple years. ECF No. 1 ¶ 13. They have spent considerable funds on this matter, including to travel and see each other while Muila's application is pending. *Id.* ¶ 107. And the Democratic Republic of the Congo may be a volatile and dangerous place for someone like Muila, with his ties to the United States. *Id.* ¶ 106.

"These circumstances are truly unfortunate." *Khan*, 2024 WL 2880426, at *4. However, "it is not just [Plaintiffs'] 'health and welfare' that the Court must consider, but also that of others similarly-situated." *Pushkar v. Blinken*, No. 21-cv-2297, 2021 WL 4318116, at *9 (D.D.C. Sept. 23, 2021). As such, the Court must recognize "that many others face similarly difficult circumstances as they await adjudication of their visa applications." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (quotation and internal quotation marks omitted). So again, placing Muila "at the head of the queue simply moves all others back one space and produces no net gain." *In re Barr Lab'ys, Inc.*, 930 F.2d at 75. Any benefit to health and welfare Muila might receive will be at the expense of another visa applicant who, but for an order from this Court, would

---

[7] Plaintiffs also argue that factor four favors them because "Defendant has not shown that there would be any undue burden on agency resources by 'expediting' action on their case." ECF No. 8 at 45. Even if this were true, it would be irrelevant. Courts in this district routinely discount this argument because, "even though 'the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities.'" *Khan*, 2024 WL 2880426, at *4 (quoting *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021)).

otherwise receive that visa.  The Court thus finds that these factors support neither party.[8]

### 4.    *TRAC* Factor Six

Finally, the sixth factor "is a wash."  *Musaleev v. Bitter*, No. 24-cv-1100 (TJK), 2025 WL 315148, at *7 (D.D.C. Jan. 28, 2025).  That factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."  *TRAC*, 750 F.2d at 80 (internal quotation marks and quotation omitted).  "Although Plaintiffs allege an unreasonable delay and decry their lack of information about the reasons for that delay, they cite no specific evidence of bad faith or impropriety."  *Khan*, 2024 WL 2880426, at *5; *see also* ECF No. 8 at 47.  At best, they argue that Defendant has acted in bad faith because his arguments about a queue are purportedly "misleading" and "fictional."  ECF No. 8 at 47.  But as the Court has already discussed, both Plaintiffs' allegations and the nature of the statutory scheme at issue support the existence of a queue.  So Plaintiffs have presented no evidence of bad faith, and this factor supports neither party.

*            *            *

In sum, after weighing the *TRAC* factors, the Court concludes that Plaintiffs have not plausibly alleged that the adjudication of Muila's visa application has been unreasonably delayed.  "In fact—unfortunately—their wait time 'pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district.'"  *Khan*, 2024 WL 2880426, at *5 (quoting *Mohammad*, 548 F. Supp. 3d at 169).  Given that all the *TRAC* factors either support Defendant or are neutral, there is "no reason for the Court to bump [Plaintiffs] to the front of the line."  *Id.*

For these reasons, the Court will dismiss Count I (the mandamus claim) for lack of subject-

---

[8] Even if these *TRAC* factors did weigh in Plaintiffs' favor, "[t]hey do not overcome the other factors that weigh strongly in the Government's favor."  *Dastagir*, 557 F. Supp. 3d at 168 (quotation omitted).

matter jurisdiction and Count II (the APA unreasonable-delay claim) for failure to state a claim.

### C.    Plaintiffs Lack Standing to Bring Count III

Finally, the Court will dismiss Count III because Plaintiffs lack standing to bring it.  Article III of the Constitution limits a federal court's jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).  Thus, "the doctrine of standing" is a "landmark" consideration for whether a case is "of the justiciable sort referred to in Article III."  *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Plaintiffs bear the burden of establishing that they have standing.  *Spokeo, Inc.*, 578 U.S. at 338.  That means they must have "clearly . . . allege[d] facts demonstrating" that they have satisfied each element of the standing inquiry.  *Id.* (first alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Those three "irreducible" elements are well-known.  *Lujan*, 504 U.S. at 560.  First, Plaintiffs must have "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Id.* (cleaned up).  Second, that injury must be "fairly traceable to the challenged action of the defendant."  *Id.* (cleaned up) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).  "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

In Count III, Plaintiffs allege that Defendant "deci[ded] to not issue the Congressionally allotted number of" FP visas from 2019 through 2023.  ECF No. 1 ¶ 159.  Recall that, at a minimum, Defendant must allocate at least 226,000 visas for the FP visa program.  8 U.S.C. §§ 1151(c)(1)(B)(ii), 1153(a).  Yet Plaintiffs allege that the Department of State "decided" not to

issue this number of FP visas for the years in question.  ECF No. 1 ¶ 161; *see also id.* ¶¶ 87–91.  They argue that these decisions "nullified and ignored Congress's considered judgment on matters of immigration."  *Id.* ¶ 159.  So when "Defendant chose not to use" the allocated visas, those decisions were "arbitrary, capricious, an abuse of discretion, and in violation of law."  *Id.* ¶¶ 159, 162.

Plaintiffs allege that these decisions have injured them by delaying Muila's visa adjudication.  They argue that, because Defendant has allegedly limited the number of visas granted every year, the visa queue moves more slowly, and Muila's visa adjudication has been delayed.  ECF No. 8 at 48.  Defendant, on the other hand, argues that Plaintiffs have failed to plausibly allege that their asserted injury—the delay in Muila's visa adjudication—was caused by these alleged decisions or that their requested relief will redress it.  ECF No. 7 at 42–44.  The Court agrees with Defendant.

Begin with causation.  Plaintiffs allege that Diakanua filed her petition with U.S. Citizenship and Immigration Services ("USCIS") on May 2, 2020.  ECF No. 1 ¶ 1.  Then, "[a]fter much waiting," USCIS approved that petition on June 16, 2022.  *Id.* ¶ 97.  But Plaintiffs have not alleged that any portion of this delay is attributable to Defendant's alleged decisions not to issue FP visas.  To begin, the Department of Homeland Security, not the Department of State, is "USCIS's parent agency."  *ITServe All., Inc. v. DHS*, 590 F. Supp. 3d 27, 30 (D.D.C. 2022).  Plaintiffs do not explain how a decision made by another department would impact USCIS's resolution of Plaintiffs' petition.  Plaintiffs also allege that USCIS approves petitions only after "verif[ying] that the petitioner is a United States citizen or legal permanent resident and that a qualifying familial relationship exists between the petitioner and the beneficiary."  ECF No. 1 ¶ 46.  Thus, under Plaintiffs' allegations, there is no reason to believe that any decisions Defendant or his predecessors may have

made about the number of visas to issue have impacted USCIS's approval of Plaintiffs' petition, and those decisions could not have caused any delay before USCIS approved the petition on July 16, 2022.

Plaintiffs have also not plausibly alleged that Defendant's purported "decision(s)" not to issue the FP visas and instead "reallocate [FP] visas to Employment Based Preference categories" caused any delay to Muila's visa adjudication following USCIS's approval of Plaintiffs' petition. ECF No. 1 ¶ 161.  After that approval, Muila submitted the required forms and payment on August 15, 2022.  *Id.* ¶ 98.  His case was then marked documentarily complete on October 25, 2022, and his case has been "current" ever since.  *Id.* ¶¶ 99–100.  Yet as mentioned above, and as Defendant explains without contradiction, a case becomes "current" when the Department determines that "a 'visa number' is available" for the applicant.  ECF No. 7 at 18.  Other cases have recognized that concept.  *Babaria*, 87 F.4th at 974 (noting that "current" means "an immigrant visa is immediately available").  So Plaintiffs' allegations establish that the Department has had a visa available for Muila since at least October 2022.

In pleading that the Department has had an available visa for Muila since 2022, Plaintiffs make any inference of causation implausible.  The only way Plaintiffs have standing to challenge the Department's under-issuance of visas is if they can plausibly allege that, but for that under-issuance, Defendant would have adjudicated Muila's case more quickly.  But in alleging that there has been a visa available for Muila since October 2022, Plaintiffs' complaint necessarily alleges that the delay was caused by something *other* than visa availability.  *See Ghalambor v. Blinken*, No. 23-cv-9377, 2024 WL 2889868, at *7 (C.D. Cal. Apr. 25, 2024).  Plaintiffs do not allege what that something else is (although the security situation in the Democratic Republic of the Congo would appear to be a rational cause for any delay, *see* ECF No. 1 ¶¶ 105–06).  Regardless, under

the facts as alleged, Plaintiffs have not plausibly alleged that any delay was attributable to Defend-

ant's alleged decisions not to issue the full number of FP visas authorized by Congress.

Plaintiffs have also failed to plausibly allege that their requested relief—a declaration that

past under-issuance was unlawful and an order mandating Defendant to issue the full number of

allocated FP visas, ECF No. 1 at 39—would redress their injuries.  Again, Plaintiffs allege that

their case has been "current" for two-and-a-half years.  ECF No. 1 ¶ 100.  That means "that an FP

visa is available and that [Muila] is eligible for an interview appointment."  *Ghalambor*, 2024 WL

2889868, at *7.  Accordingly, "Plaintiffs' injury"—Defendant's delay in adjudicating Muila's

visa—"does not arise from the unavailability of an FP visa."  *Id.*  As discussed above, the delay in

Muila's case is not fairly attributable to any alleged decision not to issue the full number of FP

visas.  Thus, ordering Defendant to issue the full number of visas would not impact Muila's case,

and Plaintiffs' "requested declaratory and injunctive relief . . . would [not] redress their injuries."

*Id.*

Because Plaintiffs have not plausibly alleged that the delay in adjudicating Muila's visa

was caused by Defendant's failure to issue all allocated FP visas or would be redressed by the

relief they seek, they lack standing to challenge that failure.[9]  Thus, the Court will dismiss Count

III.[10]

---

[9] Even if Plaintiffs had alleged standing, the Court would still dismiss Count III as moot after considering that Muila has now been interviewed and that his application has been placed in administrative processing.  Plaintiffs have alleged no facts explaining how "a delay in post-refusal adjudication of [Muila's] visa application[] . . . can be traced to Defendants' decision to not issue all family preference visas" or how "their alleged injury of a delay in post-refusal adjudication in 2025 would be redressed" by an order "to issue the total allotted number of family preference visas."  *Mirbod v. Blinken*, No. 24-cv-1430, 2025 WL 418518, at *5–6 (S.D. Cal. Feb. 6, 2025).

[10] Plaintiffs also move to compel Defendant to produce a certified list of the administrative record under Local Civil Rule 7(n).  ECF No. 9.  But the Court will "[f]ollow[] the general

**IV.    Conclusion**

For all the above reasons, the Court will grant Defendant's Motion to Dismiss and deny

Plaintiffs' Motion to Compel Pursuant to Local Civil Rule 7(n).  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 31, 2025

---

practice" and deny that motion because "the administrative record is not necessary for [the Court's] decision." *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022) (quotation omitted).